# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BETSY MAE L.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 24-2467-JWL** |
| FRANK BISIGNANO,[2] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On May 7, 2025, Mr. Bisignano was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano is substituted for Acting Commissioner Lee Dudek as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSDI benefits on March 8, 2022.  (R. 17, 254).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating her physical residual functional capacity (physical RFC or PRFC) and her mental RFC (MRFC), failed properly to evaluate the opinion evidence in accordance with 20 C.F.R. § 405.1520c, and failed to meet the agency's burden of proof at step five of the sequential evaluation process.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

2

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the

3

Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses the errors alleged in Plaintiff's Social Security Brief.  Much of Plaintiff's arguments are based on allegations of error in evaluating opinion evidence and on Plaintiff's allegations of symptoms.  Therefore, the court will first address the ALJ's finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision."  (R. 23).  It will then consider the ALJ's evaluation of the medical opinions and the prior administrative medical findings, and finally, consider Plaintiff's remaining allegations of error at step five.

## II.    Plaintiff's Allegations of Disabling Symptoms

Plaintiff's Brief discussed her allegations of disabling symptoms due to migraines, noted that the ALJ did not affirmatively find her allegations of weekly migraines inconsistent with the other evidence and argued in a footnote, "SSR 16-3p requires an explanation of 'which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions.'"  (Pl. Br. 18 & n.7) (citing this court's decision in Attia D. S. v. O'Malley, Civ. A. No. 23-1262-JWL, at *14, 2024 WL 4381228, at *6 (D. Kan. Oct. 2, 2024) (reversing where "the ALJ has not pointed to significant inconsistencies in the record with regard to Plaintiff's allegation")).  She argues, "The ALJ did not account for either time off task or absences due to her 'severe' migraine headaches in the RFC," and suggests if the AJ had done so, she would have found Plaintiff disabled because if Plaintiff consistently needed more than one day off work each month she would not be employable.  Id.  Plaintiff points out she reported to her physician that she needs to be in a dark room during her migraines, and argues, "The ALJ appears to require direct medical evidence of the cause-and-effect relationship between the impairment and the degree of claimant's subjective complaints."  Id. at 19.

## A.    Standard for Evaluating Plaintiff's Allegations of Symptoms

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential.  Such determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413

(10th Cir. 1983).  "Credibility determinations[3] are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper credibility analysis is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.  See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness,

---

[3] Luna, Thompson, and Kepler, cited herein, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on March 20, 2024, when this case was decided.  Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

and side effects of medications taken to relieve symptoms; treatment for symptoms; measures Plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

## B.    The ALJ's Findings Relating to Plaintiff's Allegations of Symptoms

The ALJ found Plaintiff allegations of disabling "symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. 23).  For the next two pages of her decision, she explained the inconsistencies she found and supported those findings with extensive citations to record evidence.  Id. 23-24.

The ALJ discussed Plaintiff's allegations of symptoms regarding lumbar degenerative disc disease, history of lumbar fracture, right knee osteoarthritis, status post right knee replacement, chronic pain syndrome, migraine headaches, status post cerebral vascular accident (CVA), history of bilateral carpal tunnel releases, history of colitis,

7

major depressive disorder, and posttraumatic stress disorder (PTSD), and explained the inconsistencies she found between the record evidence and Plaintiff's allegations of symptoms related to her impairments.  (R. 23-24).  Regarding Plaintiff's migraine headaches, the ALJ provided this discussion.

> With regard to her migraines, the claimant reported symptoms such as throbbing pain with nausea, vomiting, and photophobia increased with activity.  She reported having migraines once a week.  Medication helps but she reported that she continues with frequent migraine headaches. (Ex's. C7F/5; C17F/2).  Despite her reported symptoms, the evidence does not establish that she has to be in a dark room during a migraine occurrence. The evidence also does not support her assertion that her migraines can last three to four days.

Id. at 23.  The ALJ also noted inconsistencies with other of Plaintiff alleged symptoms.

## C.    Analysis

Plaintiff's arguments, that "SSR 16-3p "requires an explanation of 'which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions,'" (Pl. Br. 18) (quoting, without pinpoint citation, SSR 16-3p, 2017 WL 5180304, *8 (S.S.A. Oct. 25, 2017), and that "The ALJ appears to require direct medical evidence of the cause-and-effect relationship between the impairment and the degree of claimant's subjective complaints;" id., at 19; misunderstands both the law regarding evaluation of a claimant's allegations of symptoms and this court's decision in Attia D. S., 2024 WL 4381228.

As Plaintiff's quotation from SSR 16-3p requires, an ALJ must explain the individual's allegations of symptoms she finds consistent or inconsistent with the record

evidence and upon which she relies in her evaluation. However, the ruling further

explains:

> In evaluating an individual's symptoms, it is not sufficient for our
> adjudicators to make a single, conclusory statement that "the individual's
> statements about his or her symptoms have been considered" or that "the
> statements about the individual's symptoms are (or are not) supported or
> consistent." It is also not enough for our adjudicators simply to recite the
> factors described in the regulations for evaluating symptoms. The
> determination or decision must contain specific reasons for the weight
> given to the individual's symptoms, be consistent with and supported by the
> evidence, and be clearly articulated so the individual and any subsequent
> reviewer can assess how the adjudicator evaluated the individual's
> symptoms.

SSR 16-3p. 2017 WL 5180304 at *10. Moreover, as the Tenth Circuit explains in Luna,

Thompson, Kepler, and Brownrigg, if there is a "loose nexus" between Plaintiff's

impairments and her subjective allegations of symptoms, then the ALJ must consider all

the evidence, both objective and subjective, to determine whether the claimant's

symptoms are in fact disabling.

As Plaintiff argues, direct evidence of a cause-and-effect relationship between

Plaintiff's impairments and her allegations of symptoms is not required. However,

neither is a direct inconsistency with each individual symptom alleged required to

discount that symptom. As this court noted in Attia D. S., and Plaintiff apparently

missed,

> it does not agree with the line of cases from this district … tending to
> suggest that the [ALJ's] decision must provide a specific reason to discount
> each symptom alleged by the claimant. Were that the case, there would be
> no reason for the ALJ or the court to consider "the record as a whole."
> Symptoms such as fatigue and pain, particularly, are subjective and cannot
> be measured by objective tests. Therefore, inconsistencies between the
> record evidence and other allegations of symptoms [(even those related to

> other impairments)] may be sufficient to discount all [of the] plaintiff's
> allegations of symptoms.

2024 WL 4381228 at *5.  The reason the court remanded the case in <u>Attia D. S.</u> was in

that "case the ALJ simply ha[d] not provided specific reasons, supported by record

evidence, and clearly articulated to demonstrate a basis to discount Plaintiff's allegations

of disabling symptoms."  <u>Id.</u>

Here, the ALJ provided specific reasons, supported by the evidence, and clearly

articulated, which demonstrate a basis to discount Plaintiff's allegations of symptoms.

Regarding migraines specifically, the ALJ found, "the evidence does not establish that

she has to be in a dark room during a migraine occurrence.  The evidence also does not

support her assertion that her migraines can last three to four days."  (R. 23).   Plaintiff

argues, "The absence of evidence is not substantial evidence to support the ALJ's

decision."  (Pl. Br. 19) (citing <u>Thompson</u>, 987 F.2d at 1491).  Through step four,

however, the burden is on Plaintiff to prove she has disabling symptoms, not on the

Commissioner to prove she does not.  There is no record evidence beyond Plaintiff's

assertion that she must be in a dark room during her migraines and there is only one time

in the record when Plaintiff told a treatment provider she stays in a dark room during her

migraines.  (R. 506).  There is no record evidence beyond Plaintiff's report that her

migraines last three to four days at times.  Moreover, the record is absent evidence

discussed in SSR 19-4p <u>Evaluating Cases Involving Primary Headache Disorders</u>, 2019

WL 4169635 (S.S.A. Aug. 26, 2019).  The record contains no observation of a typical

headache event by an acceptable medical source with a detailed description of the event

including all associated phenomena; and there is no contemporaneous headache journal documenting when the headaches occur, how long they last, what symptoms are associated with the headaches, and other co-occurring environmental factors. SSR 19-4p, 2019 WL 4169635 at *4, *6, and n.22. While no individual evidence is required, this evidence is considered helpful to establish the presence and severity of a primary headache disorder such as migraines.

Finally, and most importantly, in her decision, the ALJ documented numerous inconsistencies between the record evidence and Plaintiff's allegations of symptoms with regard to her other impairments. (R. 23-24). Thus, while Plaintiff's allegations of symptoms resulting from her migraines are primarily subjective and cannot be proven to be inconsistent, when considered in light of the totality of the inconsistencies relied upon by the ALJ, her decision to discount Plaintiff's allegations of symptoms is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and Plaintiff does not point to record evidence which compels a contrary decision. The court finds no error in the ALJ's evaluation of Plaintiff's allegations of symptoms.

## III.    Evaluation of Medical Opinions and Prior Administrative Medical Findings

Plaintiff claims the ALJ erred in evaluating the prior administrative medical findings of each of the state agency medical consultants, Dr. Trowbridge and Dr. Lee, and of each of the state agency psychological consultants, Dr. Kasper and Dr. Martin. She also claims the ALJ failed to evaluate the medical opinion of APRN, Ms. Wolfe. She claims the ALJ found Dr. Trowbridge's opinion persuasive but failed to account for

her opinion Plaintiff was limited to only occasional stooping. (Pl. Br. 16-17). She argues the ALJ found Dr. Lee's opinion unpersuasive and additional limitations were warranted because the opinions were inconsistant with medical records and treatment history and with Plaintiff's activities of daily living but failed to even include Dr. Lee's limitations to exposure to fumes, odor, dust, etc. Id. 17-18.

Plaintiff argues the state agency psychological consultants, Dr. Kaspar and Dr. Martin, opined Plaintiff is limited to carrying out simple 1-2 step instructions and that the ALJ erred in discounting those opinions because she did not point to specific medical records and treatment history which were not fully consistent with those opinions and because Plaintiff's daily activities upon which she relied as requiring more than 1-2 step instructions were not performed 8 hours a day 5 days a week and do not prove she can perform such instructions and tasks on a full time basis. Id. 21-24. Plaintiff also argues the ALJ did not account in the RFC assessed for, nor explain why she rejected, Dr. Martin's opinions "Plaintiff was limited in the ability to maintain attention and concentration for extended periods and in the ability [to] complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Id. at 24. Finally, she argues the ALJ did not address the opinion of both Drs. Martin and. Kasper that Plaintiff was limited in the ability to carry out detailed instructions. Id. 26-27.

Citing 20 C.F.R. § 404.1520c, Plaintiff also argues the ALJ ignored and thereby failed properly to evaluate Ms. Wolfe's opinion Plaintiff should not lift or twist. Id. 27-28.

### A.  Standard for Evaluating Medical Opinions and Prior Administrative Medical Findings

The Social Security regulations explain "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  20 C.F.R. § 404.1520c.  The regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(a)(c)(1-5).  It provides that the most important factors in evaluating persuasiveness are supportability and consistency.  Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings.  20 C.F.R. § 404.1520c(b).  The articulation requirement applies for each source, but not for each opinion of that source separately.  20 C.F.R. § 404.1520c(b)(1).  It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case

13

record." 20 C.F.R. § 404.1520c(b)(2).  The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20 C.F.R. § 404.1520c(b)(3).  Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources.  20 C.F.R. § 404.1520c(d).

### B.    The ALJ's Relevant Findings

The ALJ found the psychological consultants' opinions not persuasive, explaining:

> their findings are not fully consistent with the claimant's medical records, treatment history, and activities of daily living.  Notably, the record supports that the claimant is limited to simple, routine, repetitive tasks. Further, the record, including medical records and her daily activities does not support that the claimant's maximum mental ability is 1-2 step tasks as many of her activities involve more than 1-2 steps to include her ability to drive, shop, and babysit her grandchildren.

(R. 25).

The ALJ addressed the opinions of the medical consultants separately.  She found Dr. Lee's opinion not persuasive because:

> His findings are not consistent with the claimant's medical records, treatment history, and activities of daily living which supports a finding for more restrictive limitations.  Moreover, his assessment is not consistent with the findings of Dr. Trowbridge below who was able to review a larger portion of the claimant's treatment records.

Id.  She found Dr. Trowbridge's opinion persuasive but explained that "evidence received at the hearing level, including the claimant's testimony, warrants finding additional exertional and nonexertional limitations noted in the residual functional capacity.  The

ALJ addressed the treatment provided by APRN Wolfe, noting Ms. Wolfe's exam

revealed lumbar tenderness, that Plaintiff wore a back brace, that she had a normal gait,

was able to walk on heels and toes and that her straight leg raise test was unremarkable.

(R. 23) (citing Ex. C9F/13, 14).

### C.   Analysis

Plaintiff must demonstrate the error in the ALJ's rationale or findings; the mere

fact that there is evidence which might support a contrary finding will not establish error

in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's findings from being

supported by substantial evidence.  We may not displace the agency's choice between

two fairly conflicting views, even though the court would justifiably have made a

different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations,

quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S.

607, 620 (1966) (same).  Thus, the next question for the court is whether the ALJ's

findings are supported by "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Perales, 402 U.S. at 401.  Plaintiff's appeal to a

different finding succeeds only if the record evidence compels that finding.

Plaintiff claims error in the ALJ's evaluation of Dr. Trowbridge's opinion because

she failed to comply with SSR 96-8p and explain why she rejected Dr. Trowbridge's

opinion Plaintiff could only occasionally stoop and allowed constant stooping.  (Pl. Br.

16-17).  In her Reply Brief, Plaintiff argues the ALJ found that she has greater limitations

than Dr. Trowbridge found and, therefore, should have limited her to no stooping after

which "the VE [(vocational expert)] would likely have testified no jobs would be available in accordance with SSR 85-15 [(which provides that almost any kind of work requires some stooping)]." (Reply 3). The court does not agree.

Contrary to Plaintiff's arguments, the ALJ applied SSR 96-8p and provided a narrative discussion of the RFC assessment and explained her bases for accepting or rejecting the prior administrative medical findings in this case. Plaintiff's argument the ALJ found she has greater stooping limitations than Dr. Trowbridge is incorrect because the ALJ stated the evidence received at the hearing "warrants finding additional exertional and nonexertional limitations noted in the residual functional capacity." (R. 25) (underline added). However, in her RFC the ALJ found additional limitations in the abilities to stand or walk (only 4 hours), to alternate between sitting and standing every 30 minutes, never kneel or crawl, avoid extreme heat, limited her to moderate noise and found she should not look over her shoulder. (R. 167-69). At worst, the ALJ erred in finding Plaintiff could constantly stoop. Plaintiff claims the ALJ should have found she can never stoop, but she points to no evidence suggesting she can never stoop, much less compelling that finding. However, because the ALJ found Dr. Trowbridge's opinion persuasive and did not explain why she rejected the doctor's opinion that Plaintiff can only occasionally stoop, that is evidence compelling a finding that Plaintiff can only occasionally stoop and the ALJ erred in finding otherwise. However, as the Commissioner points out, that error is harmless because none of the jobs relied on in finding work in the economy of which Plaintiff is capable require more than occasional stooping. (Comm'r Br. 15-16).

Plaintiff's argument that the ALJ found Dr. Lee's opinion unpersuasive because additional limitations were required by the medical records and treatment history, and it was therefore error for the ALJ not to include Dr. Lee's limitations to exposure to fumes, odor, dust, etc. fares no better.  As Plaintiff acknowledges, the ALJ found Dr. Trowbridge's opinion persuasive and Dr. Lee's opinion unpersuasive and discounted Dr. Lee's opinion, in part, because it was inconsistent with Dr. Trowbridge's opinion.  As Plaintiff fails to acknowledge, however, Dr. Trowbridge found Plaintiff has no limitations from exposure to fumes, odor, dust, etc.  (R. 169).  Thus, the reason to reject this allegation of error is self-explanatory.  Moreover, Plaintiff points to no record evidence which might compel a contrary finding.  Plaintiff has shown no error.

Plaintiff's claim, that the ALJ ignored and thereby failed properly to evaluate Ms. Wolfe's opinion that Plaintiff should not lift or twist, is without merit.  The regulations define a medical opinion as "a statement from a medical source about what [claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions in the" abilities to perform the physical, mental, or other demands of work, or the ability to adapt to environmental limitations.  20 C.F.R. § 404.1513(a)(2).  As relevant here, in the treatment note at issue, Ms. Wolfe, noted:

> Patient given instructions on how to care for compression fracture at home. … We discussed not lifting or twisting. I will give the patient some hydrocodone for the night time only.  She is not to take the Tylenol 3 and the hydrocodone together.  She is to take this to be able to sleep. … Patient declined PT at this point.

(R.568).

17

Plaintiff reads the treatment note to mean that Ms. Wolfe instructed Plaintiff not to lift or twist. (Pl. Br. 27). The Commissioner argues this is not a medical opinion within the meaning of the regulations because, "The treatment note does not definitively indicate that Plaintiff could not lift or twist, nor does it provide any specifics about what APRN Wolfe and Plaintiff discussed in relation to lifting and twisting." (Comm'r Br. 21). In her Reply Brief, Plaintiff argues that Ms. Wolfe "specifically stated a limitation or restriction: no lifting or twisting." (Reply 11).

As the Commissioner argues, Ms. Wolfe's treatment note is not a medical opinion within the meaning of the Social Security regulations. While a medical source's statement that her patient may not or cannot lift or twist is a restriction in the ability to perform the physical demands of work and would constitute a medical opinion, that was not Ms. Wolfe's statement. Her statement was that they discussed not lifting or twisting, and the treatment note does not reveal what the discussion was. Plaintiff may have asked if she was to lift and twist and Ms. Wolfe may have told her no, or yes, or she may have advised caution within certain limits. Ms. Wolfe may have broached the subject herself and may have provided general guidance or specific limitations. The only thing that is clear is that Ms. Wolfe did not provide specific limitations or restrictions regarding lifting or twisting in her treatment note. Thus, she did not provide a medical opinion.

Moreover, the decision reveals the ALJ did not ignore or "miss" Ms. Wolfe's treatment record for she specifically cited the evidence revealed in Ms. Wolfe's examination findings. (R. 23) (citing Ex. C9F/13, 14). Therefore, it is clear the ALJ

18

considered Ms. Wolfe's treatment note, determined it was not a medical opinion, and did not evaluate it as such.

The ALJ evaluated both psychological consultants' (Dr. Kaspar and Dr. Martin) prior administrative medical findings in the same paragraph and found them not persuasive. (R. 25) (calling them medical consultants). Each mental health professional evaluated Plaintiff's mental abilities in twenty specific abilities divided into four broad mental areas—understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Dr. Kaspar found Plaintiff had no limitations in the areas of understanding and memory, and adaptation; and that she was limited in sustained concentration and persistence to perform simple 1-2 step instructions; and she was only capable of limited social interaction with the general public and coworkers. Id. 153-56. He provided an additional explanation for Plaintiff's Mental RFC, stating that she

> is maximally able to understand, remember, and carry out simple instructions, make decisions, and attend and concentrate for extended periods, limited interact [sic] w/others, and respond appropriately to changes in a routine work settings alleged severity and limiting effects not wholly supported

Id. 156

Dr. Martin found in the area of understanding and memory Plaintiff is limited to simple instructions; in the area of sustained concentration and persistence is limited to carrying out simple, 1-2 step instructions over the course of a normal workweek; in the area of social interaction could have limited social interaction with the general public and coworkers; and in the area of adaptation is able to adapt to a routine setting with occasional changes. Id. 169-71.

Although it may have been better had the ALJ cited to particular medical evidence inconsistent with the psychological consultants' opinions, Plaintiff's argument the ALJ did not do so fails because it misapprehends the burden of proof in a Social Security case. As required, the ALJ stated her reasons for finding the opinions not persuasive and she also noted the record supported finding Plaintiff "is limited to simple, routine, repetitive tasks." (R. 25). Thus, it becomes Plaintiff's burden to point to record evidence which compels a different finding.

Plaintiff attempts to demonstrate this by arguing that Plaintiff's performing daily activities upon which the ALJ relied do not prove that she is able to work eight hours a day, 5 days a week, and in any case, after February 24, 2023, when Plaintiff stated she had a need and a plan to break from the whole situation surrounding babysitting her grandchildren, the record does not demonstrate she was babysitting. (Pl. Br. 22) (citing R. 751). Plaintiff's argument misses the point of the ALJ's finding in this regard. The ALJ found Plaintiff is able to perform a limited range of light work based upon all the record evidence as explained in her decision. She did not rely on Plaintiff's daily activities to demonstrate that she could work 8 hours a day, 5 days a week. As she explained in her decision, Plaintiff's daily activities of driving, shopping, and babysitting require more than 1-2 step tasks and are, therefore, inconsistent with the psychological consultants' opinions she is limited to 1-2 step tasks. It was not error to rely on Plaintiff's daily activities in this respect.

Plaintiff's argument regarding babysitting her grandchildren does not change that analysis. As Plaintiff argues, in the treatment record cited, Plaintiff reported her anxiety

and depression, "Mostly this revolves around her daughter, … and her three young children whom the patient babysits very often." (R. 751). The treatment note reports, "She recognizes she needs to have a break from the stress of babysitting her grandchildren so often, and not having relief from this," and she "Plans to take a break from situation this weekend and get away to Topeka with her boyfriend." Id. This record does not support the principle for which Plaintiff argues—that Plaintiff was unable to babysit her grandchildren and stopped doing so. Rather it suggests she needed a chance to relax and recuperate, which she apparently did. The fact no later medical records mention babysitting suggests the break worked as desired at least as well as it suggests she did no more babysitting, and perhaps better supports the first alternative since no later records reflect heightened anxiety from babysitting. Because the evidence supports several findings and one of them is the finding reached by the ALJ, the court affirms the ALJ in this respect.

In her final argument regarding evaluation of the psychological consultants' prior administrative medical finding, Plaintiff argues the ALJ did not account for in the RFC assessed nor explain why she rejected Dr. Martin's opinions "Plaintiff was limited in the ability to maintain attention and concentration for extended periods and in the ability complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" (Pl. Br. 24), and did not address both doctors' opinion Plaintiff was limited in the ability to carry out detailed instructions. (Pl. Br. 26-27). Contrary to Plaintiff's argument, the ALJ considered and explained her evaluation of each of these

abilities when she explained why she found Dr. Martin's and Dr. Kaspar's limitation to 1-2 step tasks unpersuasive.  Each of these abilities is one of the specific abilities within the broad area of sustained concentration and persistence.  (R. 170).  At the beginning of the form used by Dr. Martin to evaluate Mental Residual Functional Capacity it explains:

> The questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation).  Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.

Id. 169.  Dr. Martin explained the RFC she assessed for sustained concentration and persistence, "Limited to carrying out simple, 1-2 step instructions over the course of a normal workweek."  Id. 170.  She did not include any additional explanation text box. Therefore, when the ALJ explained why she had rejected Dr. Martin's limitation to 1-2 step instructions, and found the record supported a limitation to simple, routine, repetitive tasks she appropriately discounted Dr. Martin's opinion and needed no further discussion. Plaintiff fails to point to record evidence compelling greater limitations in sustained concentration and persistence.  Moreover, Dr. Kaspar, included an additional explanation in which he found Plaintiff "is maximally able to … attend and concentrate for extended periods."  (R. 156).

## VI.    Alleged Step Five Errors

Since the court has found the ALJ's RFC applied the correct legal standard and is supported by substantial evidence in the record, Plaintiff's argument that the hypothetical

presented to the vocational expert (VE) is erroneous necessarily fails.  Nonetheless,

Plaintiff also argues at step five that the ALJ failed to explain her resolution of conflicts

between the testimony of the VE and the information in the <u>Dictionary of Occupational</u>

<u>Titles</u> (DOT) and its companion publication the <u>Selected Characteristics of Occupations</u>

<u>Defined in the Revised Dictionary of Occupational Titles</u> (SCO) as required by SSR 00-

4p.

### A.    Stadard for Evaluating VE Testimony Provided to the ALJ

SSR 00-4p provides that

> Occupational evidence provided by a VE or VS [(vocational specialist)]
> generally should be consistent with the occupational information supplied
> by the DOT.  When there is an apparent unresolved conflict between VE or
> VS evidence and the DOT, the adjudicator must elicit a reasonable
> explanation for the conflict before relying on the VE or VS evidence to
> support a determination or decision about whether the claimant is disabled.
> At the hearings level, as part of the adjudicator's duty to fully develop the
> record, the adjudicator will inquire, on the record, as to whether or not there
> is such consistency.

2000 WL 1898704, *2 (SSA Dec. 4, 2000).

The ruling requires that when a VE provides evidence about a job or occupation,

the ALJ will ask the VE if the evidence provided conflicts with the DOT or SCO, and

where there is an apparent conflict obtain a reasonable explanation.  <u>Id.</u> *4.  The ruling

prescribes how an ALJ is to explain her resolution of any conflict:

> When vocational evidence provided by a VE or VS is not consistent with
> information in the DOT, the adjudicator must resolve this conflict before
> relying on the VE or VS evidence to support a determination or decision
> that the individual is or is not disabled. The adjudicator will explain in the
> determination or decision how he or she resolved the conflict. The
> adjudicator must explain the resolution of the conflict irrespective of how
> the conflict was identified.

2000 WL 1898704, *4.

**B.**    **The ALJ's Relevant Findings**

The ALJ found that the VE's testimony was consistent with the DOT and SCO except where

> supplemented with her experience, education and training with regard to limited light work with standing/walking four of eight hours; looking over the shoulder, contact with the public, coworkers and supervisors, alternating the sit/stand position; absences, breaks, and being off task.

(R. 27).

The VE testified and the ALJ accepted that Plaintiff could perform the occupations of PRICE MARKER (DOT #209.587-034), OFFICE HELPER (239.567-010), and ROUTER (DOT #222.587-038) and concluded Plaintiff is able to make an adjustment to work existing in significant numbers in the national economy and is therefore, not disabled. Id. at 27-28.

**C.**    **Analysis**

Plaintiff first argues that the occupation of Office Helper is not a repetitive job because it requires the performance of a variety of duties. There are two major problems with this argument. First, and perhaps most importantly, the ALJ did not find that Plaintiff is capable of or must perform repetitive jobs. Rather, he found, and provided in his hypothetical to the VE that Plaintiff has the abilities "to understand, remember and carry out simple, routine, and repetitive steps, tasks or instructions; … [and] to concentrate, persist and remain on task and pace to perform simple, routine and repetitive tasks, which may involve multiple non-complex simple, routine and repetitive steps, tasks or instructions." Id. 21 (emphases added). Second, the fact the occupation of an Office

24

Helper requires performing a variety of duties does not preclude the duties performed from being simple and routine, and consisting of steps, tasks, or instructions which are repetitive throughout the course of the day. The court find no conflict between the VE testimony and the DOT in this regard.

Plaintiff next appeals to the definition of "variety of duties" in The Revised Handbook for Analyzing Jobs (RHAJ) to show a conflict with the VE testimony. (Pl. Br. 31). The Commissioner points to a number of district court cases rejecting temperament factors such as Variety of duties because they are from the RHAJ not the DOT. Because district court cases are not binding on this court and because the court does not want to chase rabbits in reaching its decision, it reaches the same conclusion in a more direct manner. SSR 00-4p explains that before relying on VE evidence an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided … and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)." 2000 WL 1898704 *1. This does not reference the RHAJ, therefore, an alleged conflict with the RHAJ is not covered within the meaning of SSR 00-4p. Moreover, while neither the court, the ALJ, nor Plaintiff's counsel is qualified to interpret how the definitions in the RHAJ apply in the circumstances of this case, the VE is, and she testified that Plaintiff, with the RFC assessed by the ALJ, is able to perform the representative jobs in this case. The court finds no inconsistency in this regard.

Finally, Plaintiff presents an argument premised upon the DOT's definition of light work:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; **or** (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/**or** (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

(Pl. Br. 33) (citing, without pinpoint citation, DOT, Appx. C, Sec. IV) <u>available online at</u>, <u>Appendix C: Components of the Definition Trailer - DOT Dictionary of Occupational Titles</u>, last visited August 25, 2025) (emphases added).  Plaintiff also argues that "SSR 83-10 defines 'light' work as requiring either standing and/or walking 6 hours of an 8-hour workday with only intermittent sitting, it stands to reason that a significant degree of standing and/or walking would be more than half - or 4 hours – of an 8 hour workday." He then argues there is a conflict because the VE testified the representative jobs could be performed by Plaintiff although she can only stand 4 hours of an 8-hour workday.

The problem with Plaintiff's argument is two-fold, first she misapprehends SSR 83-10, and second, she presents her lay view of a vocational matter.  The SSR 83-10 definition on which Plaintiff relies actually says, "the <u>full range</u> of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, *6 (SSR 1983) (emphasis added).  And the ALJ specifically found that Plaintiff cannot perform the full range of light work but, in this respect, is limited to 4 hours of standing and/or walking in an 8-hour day.  (R. 21, 27). The VE testified that Plaintiff is able to perform the three representative occupations at

issue and the fact that Plaintiff or her counsel "stands to reason" as a lay person or an attorney without vocational expertise does not create a conflict where none appears. Because no unexplained conflict appears, the ALJ did not err.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 26, 2025, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**